UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

In re:

| | |
|---|---|
| BILLY A. WOODFORD & <br> LEE ANN WOODFORD | Case No. 06-50418 |
| Debtors | CHAPTER 13 |

ORDER GRANTING SECURED CREDITORS'
MOTION TO ANNUL STAY

THIS CORE PROCEEDING[1] comes before the Court on Accredited Home Lenders, Inc.'s, and Mortgage Electronic Registration Systems, Inc.'s, (collectively, "Secured Creditors") Motion for Relief From Stay, under Federal Rule of Bankruptcy Procedure 4001 and 11 U.S.C. § 362(d), to allow them to seek confirmation by the Livingston Circuit Court of a foreclosure sale of real property previously owned by Billy and Lee Ann Woodford ("Debtors").[2] After consideration of counsels' oral arguments and exhibits, this Court orders that the automatic stay be annulled so that the property at issue is not included in the Debtors' Chapter 13 plan in order to allow the Secured Creditors to obtain confirmation of the July 10, 2006, foreclosure sale in state court.

---

[1] *See* 28 U.S.C. § 157(b)(2)(G).

[2] Although the Secured Creditors move this Court for relief from the automatic stay, we understand this motion to be for an annulment rather than a modification of the automatic stay under 11 U.S.C. § 362(d)(1), as the Secured Creditors argue that the property at issue was not property of the estate at the moment the Chapter 13 petition was filed, and, thus, the automatic stay was a nullity with respect to the property at issue.

**FACTS**

Except where noted, the facts are not in dispute. Debtors owned the real property located at 1012 US Highway 60 West, Smithland, Kentucky, 42081 ("the Property"). On January 11, 2005, Debtors executed a promissory note and adjustable-rate mortgage to the Secured Creditors for their marital home. After Debtors defaulted under the terms of the mortgage, the Secured Creditors filed an action in the Livingston Circuit Court to enforce the mortgage lien. On February 17, 2006, the Livingston Circuit Court entered a judgment and order of sale to enforce the Secured Creditors' secured interest in the Property. On June 16, 2006, the Livingston Circuit Court Master Commissioner sent notice of the upcoming foreclosure auction to the Debtors. The Master Commissioner conducted a foreclosure sale on the morning of July 10, 2006, and the Secured Creditors purchased the Property for $62,677.00.[3] Approximately two hours after the conclusion of the foreclosure sale, Debtors filed a Chapter 13 petition in the Bankruptcy Court for the Western District of Kentucky. The Debtors' Chapter 13 plan proposed that they pay monthly arrearages to the Secured Creditors under the plan and, additionally, resume making regular monthly payments to the Secured Creditors outside the plan as provided under the original January 11, 2005, mortgage agreement.

On August 3, 2006, the Secured Creditors filed a motion for modification of the automatic stay with respect to the Property, asserting that the Debtors' right to cure under 11 U.S.C. § 1322(b)(5) was terminated at the conclusion of the July 10 foreclosure sale, the moment the final bid was accepted and the bidding was closed. Debtors respond that the property was

---

[3]Although the Debtors' brief states that the property yielded $66,677.00 at the foreclosure sale, the Report of Commissioner's Sale corroborates the Secured Creditors' claim that the Property actually sold for $62, 677.00.

2

not "sold at a foreclosure sale" under the terms of 11 U.S.C. § 1322(c)(1) before the filing of their Chapter 13 petition because it was filed within hours of the Master Commissioner's sale and prior to the sale confirmation as required by Kentucky Rule of Civil Procedure 53.06(2).

## CONCLUSIONS OF LAW

Strict foreclosure is prohibited in Kentucky, so a mortgagee's lien rights must be enforced by judicial proceedings and sold by a master commissioner. KRS 426.520. Among the procedural requirements for a valid sale by a master commissioner is the preparation of a report, objections to which may be filed within ten days of notice therefor. Ky. R. Civ. P. 53.06. In the case *sub judice*, the Debtors filed their Chapter 13 petition more than an hour after the Master Commissioner had concluded the public sale of the Property. Although it is unclear whether the Master Commissioner had prepared the report prior to the filing of the petition, the Circuit Court had certainly not confirmed the sale.

11 U.S.C. 1322(c) states in pertinent part:

Notwithstanding subsection (b)(2) and applicable non-bankruptcy law—

> (1) a default with respect to, or that gave rise to, a lien on the debtor's principle residence may be cured under paragraph (3) or (5) of subsection (b) <u>until such residence is sold at a foreclosure sale that is conducted in accordance with applicable non-bankruptcy law</u> . . . .

(Emphasis added.) Because the completion of a "foreclosure sale that is conducted in accordance with applicable non-bankruptcy law" cuts off the Debtors' right to cure default of the mortgage held by the Secured Creditors, a determination of whether such a sale occurred as conceived in 11 U.S.C. § 1322(c)(1) is dispositive of the motion *sub judice*.

Debtors argue that because the foreclosure sale occurred the same day they filed their Chapter 13 petition, the automatic stay applies to the Property regardless of whether the petition

3

was filed before or after the Property was auctioned.  Debtors further argue that the "foreclosure sale" had not occurred for purposes of terminating the right to cure default under 11 U.S.C. § 1322(c) because the Master Commissioner's report had not been confirmed—the last legal act required to finalize the foreclosure sale under Kentucky law.

The United States Court of Appeals for the Sixth Circuit has held, however, that "§ 1322(c)(1) terminates a debtor's right to cure a home mortgage default when the gavel comes down on the last bid at the foreclosure sale."  *Cain v. Wells Fargo Bank (In re Cain)*, 423 F.3d 617, 621 (6th Cir. 2005) (quotations omitted); *see also Fed. Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428, 1435 (6th Cir. 1985); *Agee v. Fenton Poured Walls, Inc. (In re Agee)*, 330 B.R. 561, 568 (E.D. Mich. 2005); *In re Crawford*, 232 B.R. 92, 96 (Bankr. N.D. Ohio 1999).  Debtors' argument that the foreclosure sale is not legally completed until confirmation by the Circuit Court as required by Kentucky law, though intellectually appealing, has been directly rejected by the Sixth Circuit Court of Appeals.

> We avoid any effort to analyze the transaction in terms of state property law.  Modern practice varies so much from state to state that any effort to satisfy the existing concepts in one state may only create confusion in the next.  Thus, in construing this federal statute, we think it unnecessary to justify our construction by holding that the sale "extinguishes" or "satisfies" the mortgage or the lien, or that the mortgage is somehow "merged" in the judgment or in the deed of sale under state law.

*Glenn*, 760 F.2d at 1436.  Although *Glenn* was decided prior to the amendment of 11 U.S.C. § 1322 to include 11 U.S.C. § 1322(c)(1), the Sixth Circuit has since reaffirmed the reasoning expressed in *Glenn.  See Cain*, 423 F.3d at 621.  Other courts regard *Glenn* as the proper interpretation for the subsequent enactment.  *See, e.g.*, *In re Sims*, 185 B.R. 853, 866 (Bankr. N.D. Ala. 1995) ("First the *Glenn* decision, and now Section 1322(c)(1), abrogates the need of

courts to analyze the state property rights of the debtor in the property to determine when a cure is available.").

"In deciding *Glenn*, the Sixth Circuit was deciding when a federally created right to cure under § 1322(b) was cut off, not when a particular state's foreclosure sale was deemed to be final." *Agee*, 330 B.R. at 567. The phrase "in accordance with applicable non-bankruptcy law" in 11 U.S.C. § 1322(c)(1), therefore, "does no more than require that the sale adhere to procedures mandated by state law," *Cain*, 423 F.3d at 620; it does not require the foreclosure sale be reported and confirmed as required by Kentucky law. "It is precisely differences [in various state foreclosure sale laws] such as these which led the Sixth Circuit to fix the cut-off point for the right to cure by a bright-line rule."[4] *Agee*, 330 B.R. at 566.

---

[4]There is significant disagreement among the lower courts of the United States as to the degree state foreclosure requirements must be considered in determining when a debtor's right to cure under 11 U.S.C. § 1322(b) is terminated under § 1322(c)(1), *viz*, when the property is "sold at a foreclosure sale that is conducted in accordance with applicable non-bankruptcy law." Numerous courts have labored over the correct application of this provision. *See, e.g.*, *Jim Walter Homes, Inc. v. Spears (In re Thompson)*, 894 F.2d 1227, 1228 (10th Cir. 1990) ("The courts have struggled with this problem and have adopted various approaches"); *In re Chichlow*, 322 B.R. 229, 232-34 (Bankr. D. Mass. 2004) ("Both the statute and the legislative history, to the extent relied upon by courts that have found the statute ambiguous, have created a great deal more discussion than the intended clarification.").

As explained in the body of this opinion, many courts have interpreted 11 U.S.C. § 1322(c) to be unambiguous and to cut off the right to cure under 11 U.S.C. § 1322(b)(5) when the actual foreclosure auction is concluded, regardless of whether the foreclosure requires additional steps for its consummation under state law, *e.g.*, confirmation, judicial approval, delivery of a deed, or the expiration of an objection period. *See, e.g.*, *McCarn v. Wyhy Fed. Credit Union (In re McCarn)*, 218 B.R. 154, 160 (B.A.P. 10th Cir. 1998); *In re Sims*, 185 B.R. 853, 867 (Bankr. N.D. Ala. 1995). Others have interpreted 11 U.S.C. § 1322(c)(1) to look to state foreclosure law to determine when a debtor's right to cure is cut off, finding the right to cure is cut off only when the foreclosure sale is consummated under state law, including, *e.g.*, confirmation, judicial approval, delivery of a deed, or the expiration of an objection period. *See, e.g.*, *Colon v. Option One Mortgage Co. (In re Colon)*, 319 F.3d 912, 919-20 (7th Cir. 2003); *Commercial Fed. Mortgage Corp. v. Smith (In re Smith)*, 85 F.3d 1555, 1561 (11th Cir. 1996); *In re Beeman*, 235 B.R. 519, 525 (Bankr. D.N.H. 1999); *In re Faulkner*, 240 B.R. 67, 68-69

Debtors' argument that the right to cure is preserved so long as a petition is filed on the same day as the foreclosure sale is also unavailing. Several cases from this circuit have applied the rule announced in *Glenn* in nearly identical contexts. *See, e.g.*, *Agee*, 330 B.R. at 563 (petition filed within an hour of foreclosure sale and prior to confirmation of sale required by state law); *Crawford*, 232 B.R. at 93-94 (petition filed within two hours of foreclosure sale).

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED, for the reasons set

---

(Bankr.W.D. Okla. 1999); *Homeside Lending, Inc. v. Denny (In re Denny)*, 242 B.R. 93, 596 (Bankr. Md. 1999); *Schnick v. Stephens (In re Stephens)*, 221 B.R. 290, 294 (Bankr. D. Me. 1998); *In re Rambo*, 199 B.R. 747, 751 (Bankr. W.D. Okla. 1996); *In re Barham*, 193 B.R. 229, 231-32 (Bankr. E.D.N.C. 1996).

Under Kentucky law, the highest bidder at a master commissioner's foreclosure sale obtains equitable ownership of the property upon conclusion of the auction and acceptance of the purchase money bond, although the debtor retains legal title until confirmation by the Circuit Court. *See In re Gay*, 213 B.R. 500, 502 (Bankr. E.D. Ky. 1997); *Ky. Farm Bureau Mut. Ins. Co. v. Conley*, 498 S.W.2d 122, 125 (Ky. 1973). "Although legal title to property sold at a decretal sale does not pass to the purchaser until it is conveyed to him by the commissioner under proper order of the court, . . . [the controlling element] is not the confirmation, but the purchaser's compliance with the terms of the sale." *Smith v. Nat'l Union Fire Ins. Co.*, 39 S.W.2d 189, 190 (Ky. 1931). Additionally, property sold at an auction is sold subject to a statutory right of redemption, unless the sale price amounts to at least two-thirds of the appraised value of the realty. *See* KRS 426.520, .530.

Although Article 1, § 8 of the United States Constitution authorizes Congress to establish uniform bankruptcy laws, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). "[S]tate laws are thus suspended only to the extent of actual conflict with the system provided by the Bankruptcy [Code] . . . ." *Stellwagen v. Clum*, 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918). "In the absence of an express conflict between state and federal bankruptcy law or a federal interest which requires state law to give way, the law of the state where the property is located controls questions of property rights. *Butner*, 440 U.S. at 55, 99 S.Ct. at 918." *Jim Walter Homes, Inc. v. Spears (In re Thompson)*, 894 F.2d 1227, 1231 (10th Cir. 1990) (Badlock, J., concurring in judgment only). Whether 11 U.S.C. § 1322(c)(1) is deemed to "express[ly] conflict" with state law is central to the disagreement among the Circuits. The outcome of the case *sub judice* could change if the competing interpretation of 11 U.S.C. § 1322(c) were followed. We emphasize that under any interpretation of 11 U.S.C. § 1322(c), a Chapter 13 debtor always retains any right to cure provided by state law outside the Chapter 13 plan.

6

forth herein above, that the Secured Creditors' motion to annul the stay with respect to the

Property is GRANTED.